IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RANDOLPH SOLO<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL OREGON COMMUNITY COLLEGE,<br><br>Defendants. | Civil No. 11-6242-HO<br><br>ORDER |

INTRODUCTION

*Pro se* plaintiff Randolph Solo (Solo) brings suit against defendants Central Oregon Community College (COCC); Paul Amar (Amar)and Megan Bernard (Bernard), in their individual capacities alleging violations of his civil rights, coercion and assault. [#1]. Plaintiff admits he lived in a student dormitory while attending COCC and alleges that his complaints about dormitory food led to defendants "threaten[ing] plaintiff with arrest, den[ying] him due process, illegally restrict[ing] the free speech of plaintiff on numerous occasions via coercion and interfered with the occupation of a college student by displacing plaintiff from his place of residence (mid-term) by unlawful eviction" in violation of 42 U.S.C. §1985 and 42 U.S.C.

§1983. [#1-pp.2, 4-5,¶ 8].

Defendants move to dismiss this action arguing that plaintiff's claims are precluded by COCC's Eleventh Amendment immunity and defendants Amar and Bernard's qualified immunity. [#5; #6-pp.1-2]. Additionally, defendants argue that plaintiff has failed to state facts that support either a statutory or common law claim of assault or coercion. [#6-p.2]

Discussion

Plaintiff (to the extent his claims can be construed), brings the following claims against both COCC and dormitory supervisors Amar and Bernhard in their individual capacities: (1) violation of 42 U.S.C. §1985; (2) violation of equal protection and due process under 42 U.S.C. §1983; (3) violation of plaintiff's First Amendment rights; (4) common law assault and (5) common law coercion. [#1]. Plaintiff seeks damages totaling $1,011,800.00 and injunctive relief prohibiting defendants from "enforcing COCC rules entitled 'Harassment' and 'Threats'". [#1-pp.12-13].

Defendants move to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(6). [#5; #6].

**1. Motion to Dismiss Standard:**

Under Fed. R. Civ. P. 8(a) a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require detailed factual allegations but does demand more than "an unadorned the defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).

To survive a motion to dismiss, a complaint must therefore contain sufficient facts which, accepted as true, will "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant has acted unlawfully. *Id.* This standard holds true even under the liberal construction afforded a *pro se* litigant's pleadings. *Hebbe v. Pliler,* 627 F.3d 338 ,342 (9th Cir. 2010).

**2. Facts as Pleaded:**

The background facts are gleaned from plaintiff's Complaint. [#1]. Plaintiff alleges that while he was a student at COCC, living in a COCC dormitory, defendants "prevented [him] from asserting [his] civil rights by threatening [him] with fabricated disciplinary actions and physical harm." [#1-pp5-6].

On or about May 3, 2011, defendant Amar allegedly alerted a food-service employee's husband that plaintiff had complained about the food. [#1-p.6, Exs 1,2]. Subsequently, plaintiff contends the husband told him "you should be careful that you don't get fitted with cement shoes and thrown into the Deschutes River." [#1-p.6].

On May 17, 2011, plaintiff alleges that defendant Amar left "a live .25 caliber handgun bullet in plain view on the men's bathroom floor of Juniper Hall, directly across from [plaintiff's] dorm room with the intended purpose of delivering a death threat to [plaintiff]." *Id.* The next morning plaintiff alleges that defendant Bernard, told him not to tell anyone about the bullet. [#1-pp.6-7]. Plaintiff admits he subsequently "warned" several of his fellow students that "someone may have a gun in the dorm." Amar reported plaintiff's warnings to Paul Wheeler as a violation of the 'Breach of the Peace' dormitory policy. [#1-p.7].

Plaintiff asserts that on May 19, 2011, acting on plaintiff's insistence, Wheeler sent an email to dorm students telling them a "single piece of small caliber ammunition was discovered" and assuring them "that Juniper Hall remains a safe and secure place to live." [#1-p.7, Ex. 5]. That same day plaintiff, Wheeler and Amar conducted a hearing at which it was determined that plaintiff would be evicted from the dormitory based on the 'Breach of Peace' charges. [#1-pp. 7-8]. Subsequent to the hearing, plaintiff alleges he was "evicted from the building and threatened [] with arrest for trespass if [he] returned." [#1-p.8, Ex 7].

Plaintiff admits that he did not appeal this eviction because "[a]t this point it was obvious to [him] that any disciplinary hearings that occurred on the COCC campus were devoid of impartiality and were mere facade . . . ." [#17-¶¶ 17-

18].

**3. Eleventh Amendment Immunity:**

Defendants assert that COCC is a public community college and thus an arm of the State of Oregon, and so entitled to Eleventh Amendment immunity [#60-p.3]

Previous Ninth Circuit cases have found that the Oregon Board of Higher Education is immune from suit under 42 U.S.C.§ 1983. *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th Cir. 1982)( a suit against the [Oregon] State Board of Higher Education is a suit against the state *qua* state and is, therefore, barred by the Eleventh Amendment). To determine whether an Oregon community college such as COCC enjoys Eleventh Amendment immunity, the court must look to COCC's nature as created by state law. *Regents of the Univ* v. *Doe, 519 U.S. 425, 429-30 (1997)*.

Oregon statutory law subjects the community colleges to the jurisdiction of the Board of Higher Education. , ORS 341-009(4). COCC is therefore an arm of the State of Oregon and immune from suit under the Eleventh Amendment.

**4. Qualified Immunity:**

Defendants argue individual defendants Amar and Bernhard are not subject to suit under section 1983 or 1985 unless they took an affirmative part in the alleged deprivation of constitutional rights. *King* v. Atiyeh, 814 F.2d 565, 568 (9th Cir.1987). Because the eviction notice did not come from either Bernhard or Amar, defendants contend plaintiff has failed to

demonstrate that neither individually named defendant played an affirmative role in any alleged constitutional rights deprivation. [#6-pp.4-5]. Defendants further assert that even if these defendants were involved in the actions of which plaintiff complains, they are entitled to qualified immunity because they could not have reasonably known that those actions were a violation of any of plaintiff's constitutional rights. [#6-pp.4-8].

Plaintiff admits that COCC's employees would have qualified immunity however argues that because Amar and Bernard are not employed by COCC, as is Wheeler, they are not entitled to qualified immunity. [#7-p.5]. Plaintiff also admits that he failed to identify the section of 42 U.S.C §1985 under which he was suing and requests leave of the court to amend his complaint to include a claim under subsection "3". [#7-p.6].

A public official is shielded from liability so long as that conduct is objectively reasonable and does not violate clearly established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect the public from unwarranted timidity on the part of public officials" and to avoid "dampen[ing] the ardour[sic] of all but the most resolute, or the most irresponsible." *Richardson v. McKnight*, 521 U.S. 399, 408 (1997). To this end, the qualified immunity standard "gives ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502

U.S. 224, 29 (1991). "Moreover, because the entitlement is an *immunity from suit* rather than a mere defense to liability, [the Court has] repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 227 (emphasis in original).

Given that the named defendants are sued in their individual capacities[1], and were acting as student dormitory officials, they are entitled to qualified immunity.

Section 1985(3) prohibits a conspiracy to deprive a person of his or her rights or privileges. 42 U.S.C §1985(3). To justify relief under this subsection there "must be some racial or otherwise class-based, invidious discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). Plaintiff claims the protected class to which he belongs is the "class of students". [#7-p.2].

Even construing plaintiff's allegations broadly, his claim fails to allege a conspiracy and clearly does not allege a conspiracy motivated by race or any other protected class-based discriminatory animus.

///

///

///

///

1 A qualified immunity defense is available only to government officials sued in their individual capacities. *Eng v. Cooley,* 552 F.3d 1062, 1064 n.1 (9th Cir. 2009).

CONCLUSION

Defendants' Motion to Dismiss [#5] is GRANTED. This action is dismissed.

IT IS SO ORDERED.

DATED this 21st day of December, 2011

Michael R. Hogan
UNITED STATES DISTRICT JUDGE